**BROOKPARK ENTERTAINMENT, INC.,**
d/b/a Crazy Horse Saloon, Plaintiff–
Appellant, Cross–Appellee,

v.

Bob TAFT; John Hall, Defendants–
Appellees, Cross–Appellants,

Robert Hughes; John M. Coyne; Thaddeus J. Jackson; Roger M. Synenberg;
Dale Miller, Defendants–Appellees.

Nos. 90–4130, 91–3070.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 5, 1991.

Decided Dec. 16, 1991.

Order on Denial of Rehearing
Feb. 20, 1992.

Jennifer L. Brunner (argued & briefed), Thomas P. Michael, Columbus, Ohio, for plaintiff-appellant cross-appellee.

Catherine M. Cola, Asst. Atty. Gen. (briefed), Chester T. Lyman, Jr. (briefed), Office of Atty. Gen., Columbus, Ohio, for defendants-appellees cross-appellants.

Michael P. Butler (briefed), Timothy J. Kollin, Office of Pros. Atty., Stephanie Tubbs Jones, Cuyahoga County Pros. Attys. Office, Mark I. Wallach, Calfee, Halter & Griswold, Malcolm C. Douglas (briefed), Office of Director of Law, Cleveland, Ohio, Cherry L. Poteet (argued), Catherine M. Cola, Asst. Atty. Gen. (briefed), Office of Atty. Gen., Columbus, Ohio, for defendants-appellees.

Before GUY, Circuit Judge, BROWN, Senior Circuit Judge, and CHURCHILL, Senior District Judge.*

RALPH B. GUY, JR., Circuit Judge.

The plaintiff, a nightclub, challenges the constitutionality of an Ohio statute allowing for the revocation of its liquor license by popular referendum. The district court dismissed the action, finding that the federal issues were moot because the referendum on the plaintiff's license was untimely under Ohio law. The district court also stated in dicta that the plaintiff's constitutional challenges were meritless. The Ohio Supreme Court subsequently ruled

* Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

that the challenged referendum was timely under Ohio law.

We find that the district court based its dismissal on an erroneous reading of Ohio law, and we reverse that dismissal. Since the district court has twice spoken to the merits of plaintiff's constitutional claims and since those claims challenge the Ohio statute on its face, we find those claims properly before us. We hold that the challenged Ohio statute is facially unconstitutional under the Due Process Clause of the Fourteenth Amendment. Therefore, we remand the case to the district court with instructions to enter a judgment for the plaintiff.

## I.

The facts are essentially undisputed. The plaintiff, Brookpark Entertainment, Inc., operates the Crazy Horse Saloon in Cleveland. Brookpark sells alcoholic beverages under a series of permits issued by the Ohio Department of Liquor Control.

The Department suspended Brookpark's liquor permits during the summer of 1989. On November 16, 1989, the Department found that Brookpark had violated Ohio liquor control laws by selling liquor during the suspension. Brookpark contended that the violation resulted from a misunderstanding as to whether the suspension had been stayed. The Department imposed no penalty for the violation.

The Department's decision not to penalize Brookpark for the violation did not end Brookpark's problems. Under Ohio law, the voters living in the same precinct as a liquor establishment can revoke the establishment's license by referendum within one year of a finding of any liquor law violation. Ohio Rev. Code §§ 4301.321, 4301.331, 4301.352, 4301.362. The local election board must place the question on the ballot if it receives valid signatures equal to 35 percent of the votes cast in the precinct in the most recent gubernatorial election. Ohio Rev.Code § 4301.33. During the summer of 1990, Dale Miller, a Cleveland city councilmember, and several other citizens began circulating petitions to put Brookpark's liquor license on the ballot. On August 24, 1990, the Cuyahoga County Board of Elections notified Brookpark that it had received the petitions. Brookpark did not challenge the validity or sufficiency of the petitions or signatures. The Board of Elections validated the petitions and certified this question for the November 6, 1990, ballot: "Shall the sale of spirituous liquor, mixed beverages, wine and beer by Brookpark Entertainment, Inc., dba Crazy Horse Saloon at 16600 Brookpark Rd., Cleveland, Ohio 44135 be permitted in this precinct?"

Brookpark filed this action on October 23, 1990, alleging that the Ohio "particular premises" local option law is facially unconstitutional. In particular, Brookpark claimed that the law violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Article I, Section 10, prohibition against bills of attainder. Brookpark's complaint named as defendants Councilmember Miller, four members of the Cuyahoga County Board of Elections, the director of the Department, and the Ohio Secretary of State. Brookpark sought declaratory and injunctive relief. Brookpark also requested both a preliminary injunction and a temporary restraining order to prevent the members of the election board from counting the ballots, certifying the results, or notifying the Department of the outcome of the upcoming referendum.

On the day of the election, the district court *sua sponte* dismissed the entire cause of action for lack of federal subject matter jurisdiction. *Brookpark Entertainment, Inc. v. Brown*, 750 F.Supp. 856 (S.D.Ohio 1990).[1] The court noted that section 4301.321 requires any "particular premises" election to be held within one year of the time the establishment "has been found ... to have violated" a liquor law. The court interpreted this section to require that the election be held within one year of the date of the violation, not the date of the finding. *Id.* Since the violation occurred more than a year before the elec-

---

1. On appeal, the new Secretary of State, Bob Taft, has been substituted as a defendant for the previous Secretary, Sherrod Brown.

tion, the district court held that the election was clearly untimely under Ohio law. *Id.* Therefore, the court held that federal subject matter jurisdiction was lacking because the case was moot. *Id.*

The district court's opinion went on, however, to discuss Brookpark's constitutional claims in dicta. The court concluded that the statute was not a bill of attainder since it did not single out anyone for legislative punishment. *Id.* The court also stated that Ohio's interest in regulating the sale of liquor met the rational relationship test under the Equal Protection Clause. *Id.* Finally, the court stated that an Ohio liquor license is not property within the meaning of the Due Process Clause and that the Ohio statute contains ample procedural protection. *Id.* at 860–61.

Brookpark then filed this appeal of the district court's dismissal. The Secretary of State and the director of the Department cross-appealed to challenge the district court's interpretation of the election timing requirements.

After the district court dismissed the case, Brookpark petitioned the Ohio Supreme Court for writs of prohibition and mandamus to stop the certification of the election results. Brookpark based its petition on the same state law grounds that the district court relied upon to dismiss Brookpark's claims. On May 29, 1991, the Ohio Supreme Court denied Brookpark's petition. *State ex rel. Brookpark Entertainment, Inc. v. Cuyahoga County Bd. of Elections*, 60 Ohio St.3d 44, 573 N.E.2d 596 (1991). The state court expressly rejected the district court's interpretation of the election timing requirements and held that the one-year period did not begin to run until the Department formally found the violation on November 16, 1989. *Id.*, 573 N.E.2d at 600–01.

Six days later, the district court denied Brookpark's motion for an injunction pending this appeal. Finding that the issue of the statute's constitutionality was now squarely before it, the court adopted its earlier dicta to conclude that Brookpark was not likely to succeed on the merits.[2]

## II.

■ Both Brookpark and the cross-appellants argue that the district court's *sua sponte* dismissal for lack of subject matter jurisdiction was error. We agree and reverse that dismissal.

The district court erred by labeling the reasoning for its dismissal as jurisdictional. Essentially, the district court dismissed Brookpark's constitutional claims because it held that Brookpark had a clear winning claim under Ohio law. Such a holding is irrelevant to jurisdiction. The only jurisdictional question properly before the district court was whether federal question jurisdiction was invoked on the face of Brookpark's complaint. We agree with the parties that Brookpark's complaint invoked federal question jurisdiction.

As a result of the district court's ruling, Brookpark was forced to file a petition in state court in a futile attempt to obtain relief on a supposedly favorable state law ground that it had never urged before the district court. At the same time, the state was saddled with an unfavorable interpretation of its election timing requirements and has cross-appealed in an attempt to overturn that ruling. The error was compounded when the district court's interpretation of Ohio law turned out to be wrong. The Ohio Supreme Court held that the time for an election runs from the date of the finding, not the date of the violation. *Brookpark*, 573 N.E.2d at 600–01. We hold that the district court erred in dismissing Brookpark's complaint on jurisdictional grounds. Accordingly, we reverse that dismissal.[3]

---

**2.** The only order before us on appeal is the November 6, 1990, dismissal of Brookpark's case. However, our recitation of the facts demonstrates that many significant developments occurred after this appeal was initiated. In fact, the Ohio Supreme Court's decision came *after* Brookpark's reply brief was filed (but before the cross-appellants' reply briefs were filed). While

we only review the November 6, 1990, dismissal, we note the subsequent history because it would be anomalous for us to ignore it given our ultimate disposition of this appeal.

**3.** The cross-appellants argue that the district court should have abstained from ruling on

## III.

The district court has twice spoken on the merits of Brookpark's constitutional claims. After dismissing Brookpark's claims for lack of subject matter jurisdiction, the court stated at length that those claims were legally insufficient. 750 F.Supp. at 860–62. When Brookpark sought an injunction pending this appeal, the court again ruled that Brookpark's constitutional claims lacked merit.

■ Since Brookpark attacks the constitutional validity of the statute on its face, there are no real issues of material fact to be resolved. Under these circumstances, we agree with the cross-appellants that it would be a waste of judicial resources to remand for a hearing on the merits of Brookpark's constitutional claims. Therefore, we consider those claims.

■ Brookpark first argues that the Ohio "particular premises" local option statute violates the Due Process Clause of the Fourteenth Amendment. We agree.

The district court stated, and the defendants argue on appeal, that an Ohio liquor license is not property within the meaning of the Due Process Clause. "The due process clause only protects those interests to which one has a 'legitimate claim of entitlement.' This has been defined to include 'any significant property interests, including statutory entitlements.'" *Brotherton v. Cleveland*, 923 F.2d 477, 480 (6th Cir. 1991). "Government licenses are ... a form of property insofar as they constitute an entitlement to engage in a valuable activity." 2 Ronald D. Rotunda et al., Treatise on Constitutional Law: Substance and Procedure § 17.5 (1986). An individual having "present enjoyment of the benefit and a claim of entitlement to its continuation under state law ... [has] a property interest which [is] protected by the due process clause." *Id.*

■ To decide whether a liquor license is property under the Due Process Clause, we must examine both Ohio law and federal constitutional law. "Although the underlying substantive interest is created by 'an independent source such as state law,'

federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (citations omitted). The license may rise to the level of property under the Due Process Clause even though Ohio chooses not to call it property. "[W]e must look behind labels, and decide whether the plaintiffs' license was 'property' in a functional sense." *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir.1983) (citations omitted). In short, we look to Ohio law to determine the *nature* of the interest, not the *label* to apply to it.

We therefore begin our inquiry by examining the interests that attach to an Ohio liquor license. We recently examined Ohio liquor licenses to determine whether they are property for the purposes of federal tax and bankruptcy law. *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168 (6th Cir.1990). In concluding that Ohio liquor licenses are property, we stated:

Ohio allows a liquor license to be transferred, sold, inherited, and renewed. *See generally*, Ohio Rev.Code Ann. §§ 4303.-26, 4303.271, and 4303.273 (Anderson 1988) and Ohio Admin. Code § 4301:1–1–14. It is undeniable that a liquor license has pecuniary value to its holder since the license enables the holder to sell alcoholic beverages and can be sold for value. Since the state has vested the owner of a liquor license with these beneficial interests, a liquor license constitutes "property" or "rights to property" within the meaning of federal tax lien law.

*Id.*, 911 F.2d at 1171 (footnote omitted).

In addition to the rights to transfer, sell, bequeath, and renew, a holder of an Ohio liquor license also has the right to a hearing before revocation and the right to appeal any adverse determination of the Department. Ohio Rev.Code §§ 4301.27, 4301.28. In *Reed*, the Seventh Circuit held that an Illinois liquor license was property within the meaning of the Due Process

Ohio law. We need not consider this argument because the Ohio Supreme Court has definitively rejected the district court's interpretation of state law.

Clause even though it could not be sold or bequeathed. 704 F.2d at 948. The court found that the Illinois license was property because the holder had a right of renewal and the license could be securely held for its term unless there was cause for revocation. *Id.* While the Ohio revocation provision does not state that a license can be revoked only for cause, the notice, hearing, and appeal provisions would be pointless unless the legislature intended there to be some reason for revocation. Since an Ohio license can be sold and bequeathed, it has even more of the attributes of property than the Illinois license at issue in *Reed.*

The defendants rely on a series of Ohio cases to support their contention that a liquor license is not property. In *State ex rel. Zugravu v. O'Brien,* 130 Ohio St. 23, 196 N.E. 664 (1935), the Ohio Supreme Court concluded that a liquor licensee had no property interest because the legislature could terminate the license. *Id.,* 196 N.E. at 666. In *Abraham v. Fioramonte,* 158 Ohio St. 213, 107 N.E.2d 321 (1952), the court relied on the fact that a license at that time could not be sold to conclude that it was not property. *Id.,* 107 N.E.2d at 327–28. The Ohio Court of Appeals has also held that a liquor license is not a property interest. *Scioto Trails Co. v. Ohio Dep't of Liquor Control,* 11 Ohio App.3d 75, 462 N.E.2d 1386 (1983). The *Scioto Trails* court cited *Zugravu* for the proposition that no property interest attaches because the license is revocable. *Id.,* 462 N.E.2d at 1389. However, the court later conceded in dicta that some limited due process protection may attach to liquor licenses. *Id.* at 1391. The court stated, however, that there could be no due process violation when citizens vote an entire precinct dry because the licensee may use the permit elsewhere. *Id.* Finally, in *Rickard v. Ohio Dep't of Liquor Control,* 29 Ohio App.3d 133, 504 N.E.2d 724 (1986), another local option case, the court again conceded in dicta that due process may apply if the license holder could not transfer the license outside of the newly dry area. *Id.,* 504 N.E.2d at 729.

The Ohio cases cited by the defendants do not alter our conclusion that a liquor license is property. First, we emphasize that we do not rely on the labels that a state gives to the interests it has created. In deciding that Ohio liquor licenses were property for tax and bankruptcy purposes, we stated:

Although it is true that the state has the right to decide what property interests it wishes to create, it cannot thwart the operation of the Tax Code by classifying the interests it has created as something other than property rights.... While several Ohio courts have refused to label the rights granted to the [liquor] licensee as "property rights," the state nonetheless has chosen to grant the licensee rights tantamount to property rights in all but name.

*Terwilliger's,* 911 F.2d at 1171–72 (footnote omitted).

As in *Terwilliger's,* we do not find persuasive the labeling applied by the Ohio courts. *Abraham* refers to permits that could not be transferred or sold, unlike current permits. *Zugravu, Scioto Trails,* and *Rickard* hold that the license is not property because the legislature can revoke it. According to this argument, the holder cannot complain about the state-provided deprivation procedures, however unreasonable and arbitrary, because those procedures are part of the interest that the holder knowingly obtained. While this argument has some superficial appeal, the Supreme Court has explicitly rejected it.

[I]t is settled that the "bitter with the sweet" approach misconceives the constitutional guarantee .... The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. *"Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee.* While the legislature may elect not to confer a

property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."

*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (emphasis added; citations omitted).

An Ohio liquor licensee holds a substantial and valuable interest and has a claim to its continuation under state law. Accordingly, we hold that a holder of an Ohio liquor license has a property interest protected under the Due Process Clause.[4] Therefore, the state must accord a liquor licensee due process before revoking the license.

We must next determine whether the Ohio "particular premises" local option statute provides due process. We conclude that it does not.

The fundamental problem with the Ohio "particular premises" law is the arbitrariness inherent in a referendum. In *Philly's v. Byrne,* 732 F.2d 87 (7th Cir.1984), the court found that Illinois' local option liquor law did not violate the Due Process Clause. The law was a constitutional delegation of legislative power because

> [t]he voters must shut down all the retail liquor outlets in the precinct in order to shut down one.... *This means not only that the licensee who is disliked is protected to some extent by the licensee who is liked but also that the voters cannot impose costs on liquor sellers without imposing costs on themselves—the costs of not being able to buy liquor in the precinct.*

*Id.,* 732 F.2d at 92 (emphasis added).

Unlike the law upheld in *Philly's,* the Ohio "particular premises" statute is not a valid delegation of legislative power because it allows the voters to permanently close only those establishments that they dislike. The Seventh Circuit in *Philly's* explained why such a targeted referendum would violate due process:

> The concern is that the voters might "gang up" to drive out of business a

seller of liquor whom they disliked for reasons unrelated to any plausible public interest. This is a distinct type of arbitrary action that the requirement of fair procedure is designed to prevent, or at least make less likely to occur.

*Id.*

Five years after the decision in *Philly's,* Illinois amended its liquor control laws to allow for liquor license referendums targeted at particular establishments. Ill.Ann. Stat. ch. 43, para. 167. That provision was recently invalidated on due process grounds. *87 South Rothschild Liquor Mart v. Kozubowski,* 752 F.Supp. 839 (N.D.Ill.1990). The *Kozubowski* court adopted the reasoning of *Philly's* and added:

> [T]here is, as Judge Posner noted in *Philly's,* no criterion for peering beneath the voters' decisionmaking. But when voters pointedly single out a particular licensee, and do not target other licensees in the same precinct, the risk is no more and no less than that they are "gang[ing]" up to drive out of business a seller of liquor whom they disliked for reasons unrelated to any plausible public interest." This is precisely the kind of capricious action that the due process of law provisions in the Constitution are designed to prevent.

*Id.* at 842 (quoting *Philly's,* 732 F.2d at 92).

Finally, we note that the Ohio Court of Appeals, in upholding the Ohio local option law against due process challenges, has twice stated in dicta that a licensee might have a due process claim if the license could not be transferred out of the dry area. *Scioto Trails,* 462 N.E.2d at 1391; *Rickard,* 504 N.E.2d at 729. The "particular premises" law, by contrast, allows the voters to totally revoke the license.

The defendants argue that due process is satisfied by the requirement that a holder must be found to have violated a liquor law before a revocation referendum can be held. The problem with this argument is the lack of proportionality. The severity of the violation is completely unrelated to the possibility of a revocation referendum. The Ohio law allows the voters to subject a

---

4. We do not hold that a first-time applicant for a liquor license has a property interest. *See*

*Shamie v. City of Pontiac,* 620 F.2d 118, 120 (6th Cir.1980).

licensee to revocation simply because it is disliked, while a more popular licensee can escape revocation despite more frequent and more severe violations. Here, the state concluded that Brookpark deserved no penalty whatsoever for its violation, but Brookpark still was subjected to a revocation referendum. Brookpark alleges that a nearby establishment has been found to have violated the state liquor laws six times since 1981, but has never had its license put on the ballot.

We agree with the reasoning of the courts in *Philly's* and *Kozubowski* that such arbitrary targeting violates a licensee's due process rights. We therefore hold that the "particular premises" local option provisions of Ohio Rev.Code §§ 4301.321, 4301.331, 4301.352, and 4301.362 facially violate the Due Process Clause of the Fourteenth Amendment.

## IV.

■ We also examine briefly Brookpark's other constitutional claims. Brookpark argues that the "particular premises" local option statute violates the Equal Protection Clause of the Fourteenth Amendment by singling out certain establishments for liquor license revocation. However, private citizens, not state actors, determine which establishment's liquor license goes on the ballot. Since all similarly situated liquor establishments are equally subject to a citizen-initiated petition drive, we agree with the district court that Brookpark failed to show any invidious state classification. We therefore affirm the dismissal of Brookpark's equal protection claim.

■ Brookpark also argues that the challenged sections of the Ohio liquor control law amount to a bill of attainder in violation of Article I, Section 10. In order to determine whether a statute is a bill of attainder, we must answer three inquiries: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative

purposes"; and (3) whether the legislative record "evinces a [legislative] intent to punish."

*Selective Serv. Sys. v. Minnesota Pub. Interest Research Group*, 468 U.S. 841, 852, 104 S.Ct. 3348, 3355, 82 L.Ed.2d 632 (1984) (citations omitted).

We agree with the district court that Brookpark has failed to show how the "particular premises" statute evinces a legislative intent to punish. We therefore affirm the dismissal of Brookpark's bill of attainder claim.

Accordingly, we REVERSE the district court's dismissal and REMAND the case with instructions to enter a declaratory judgment that the challenged provisions of the Ohio liquor control law facially violate the Due Process Clause. We further instruct the district court to grant Brookpark appropriate injunctive relief and other relief as necessary. Finally, we instruct the district court to dismiss Brookpark's equal protection and bill of attainder claims.[5]

## Order.

### Feb. 20, 1992.

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and no judge of this court having requested a vote on the suggestion for rehearing en banc, the petition for rehearing has been referred to the original hearing panel.

The panel has further reviewed the petition for rehearing and adheres to its original decision, but concludes that three issues raised by the state merit further comment.

First, the state points out that Ohio Revised Code §§ 4301.325 and 4301.331 were amended in 1991 to provide for the possibility of referendums only where the Department has imposed a penalty against the establishment. Since no penalty had been imposed against Brookpark, no referendum would have been possible under the amended statute. Our holding only applies to the earlier version of the statute. We express no opinion as to the constitutionality of the amended statute.

---

**5.** The Secretary of State, the Director of Liquor Control, and Councilmember Miller all argue

that they are not proper parties to Brookpark's

**718**

Second, the state argues that the case has been mooted because in September 1991, after the submission of the parties' briefs in this case, an Ohio court upheld the revocation of Brookpark's liquor license. It is not clear whether this revocation was pursuant to the referendum election at issue in the present case. Brookpark argues, however, that its license already had been revoked pursuant to the election and the state court lacked jurisdiction to revoke a previously revoked license. Therefore, the state court ruling arguably does not moot the case. In any event, these subsequent proceedings are not a part of our record.

Third, the state complains that the panel raised and decided the constitutional issue *sua sponte*. We reject this contention. The state, in its brief to the panel, argued that the constitutional issues were ripe for adjudication and argued against remand.

The petition for rehearing is denied.

complaint. If, on remand, the district court decides that Brookpark is entitled to relief beyond that given by a declaratory judgment, the court must decide against which defendants to order that relief. Therefore, we leave the question of which defendants are proper parties to the district court for its determination on remand.