In the following appeal, appellants, Samuel T. Abdalla, et al., appeal from a judgment of the Portage County Court of Common Pleas as to the claims submitted by appellees, Michael D. Buzulencia, Trustee, et al., that appellants fraudulently conveyed "assets," as that term is defined in R.C. Chapter 1336, to defraud creditors. Specifically, appellees accused appellants of fraudulently conveying a license to sell fireworks for the sole purpose of attempting to avoid payment of a $200,000 judgment. For the reasons that follow, we affirm the judgment of the trial court.
The following facts, as determined by the trial court, are pertinent to this appeal. On July 1, 1993, appellees, Midwest Fireworks Manufacturing Co., Inc. and its sole owner, Larry D. Lomaz (collectively referred to as "appellees"), received a judgment in the amount of $200,000 against 14 76 Novelty Fireworks Co., Inc. ("14 76 Fireworks"), an entity controlled by appellant, Samuel T. Abdalla ("Abdalla"). At the time of this judgment, 14 76 Fireworks held a license to sell fireworks at its location at 4427 State Route 14, Edinburg, Ohio. On October 12, 1993, at the request of Abdalla, the fireworks license was transferred to himself, individually, d.b.a. 14 76 Fireworks.[1]
On February 15, 1995, while the $200,000 judgment was still outstanding, the Portage County Court of Common Pleas appointed a receiver to control any and all operations of 14 76 Fireworks. The day before the receiver was appointed, Abdalla requested a transfer of the license from him individually to another entity that he controlled, Safety Fourth Fireworks, Inc., d.b.a. Prism's Fireworks Factory ("Safety Fourth"). At the time Abdalla sought the transfer of the license between the businesses he controlled, the trial court found that he knew of the imminent appointment of the receiver and made the request for transfer with full knowledge of the impact of both the unpaid judgment and the rights and operation of the court appointed receiver. The State Fire Marshall subsequently granted Abdalla's request. The trial court found that no valid consideration was given for the transfer and that Abdalla's intent for the transfer was an attempt to shield his business from the $200,000 judgment.
On May 10, 1996, the receiver filed a complaint for "Accounting and Injunctive Relief" against a number of parties including 14 76 Fireworks, appellees, Abdalla, and Safety Fourth. In the complaint, the receiver alleged that Abdalla and possibly others were attempting to hinder and defraud the proper administration of the receivership by diverting the assets of 14 76 Fireworks. Appellees filed a cross-claim on August 7, 1996, agreeing with the receiver's complaint in many respects and asserting that Abdalla was engaged in "fraudulent machinations" to remove assets belonging to 14 76 Fireworks.
Following the filing of the receiver's complaint and appellee's cross-claim, 14 76 Fireworks filed for bankruptcy and claimed benefit of the automatic stay provision provided for in the Bankruptcy Code. The action before the trial court continued, however, with the trustee in bankruptcy substituted as party plaintiff, when the bankruptcy court modified its stay order to permit the trial court to proceed to judgment. The trial court heard the matter on July 22, 1997.
By judgment entry filed August 5, 1997, the trial court issued its decision which included extensive findings of fact and conclusions of law. The trial court determined that Abdalla "purposefully caused a transfer of the license [from 14 76 Fireworks to Safety Fourth] so as to frustrate and immobilize the rights of the judgment creditor, including the rights of the court appointed receiver to enter upon and operate the business, under the license, for the benefit of the creditor." The trial court granted appellees the following relief on their cross-claim:
 "It is therefore ordered that the successors to the 14 76 fireworks license, No. 56-67-1, i.e. Defendants Samuel T. Abdalla, Safety Fourth Fireworks, Inc., dba Prism's Fireworks Factory, account to the Trustee in Bankruptcy for the year 1995 (the year in which the receiver was appointed) and so many years thereafter as to demonstrate a profit, or withdrawal from the entities, of the amount of the judgment plus interest.
 "To the extent the successor entity accounting demonstrates withdrawals from the accounts of earnings or profits, judgment shall be granted in consecutive amounts against each defendants herein until the amount of the prior judgment debt is realized to the Trustee in Bankruptcy.
 "This judgment in equity is certified to the U.S. District Court No. 96-42535 in whom jurisdiction is reinvested to administer the process of accounting and collection."
In reaching its decision, the court recognized a series of cases in Ohio holding that a liquor license is a mere revocable license issued by the state and created no contract or property rights that are subject to execution or attachment. See,e.g., Abraham v. Fioramonte (1952), 158 Ohio St. 213, paragraph five of the syllabus; Cf. Brookpark Entertainment, Inc., v.Taft (1991), 951 F.2d 710, 714-716. The trial court concluded that the same reasoning would apply to a license issued by the state as to the sale of fireworks. However, the court recognized that none of these cases addressed the question of "whether a license holder may effectively bar a creditor from the fruits of the exercise of the license that have, in fact, been garnered as a consequence of fraudulent conduct." The court determined that, under the circumstances, it would be manifestly unjust to deny appellees the ability to recover from a valid judgment simply because appellants successfully convinced the licensing authority to issue a new license to another entity owned and operated by the same person. From this judgment, appellant filed a timely notice of appeal and now asserts the following assignment of error:
 "[1.] The Trial Court Erred in Finding that although the State Issued Fireworks License [sic] Could Not Be Transferred by a Licensee, the "Fruits" of the License Were Somehow Fraudulently Transferred."
A fraudulent conveyance is defined, in relevant part, by R.C.1336.04:
 "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; * * *"
In the present case, the trial court made a finding that Abdalla transferred a fireworks license between 14 76 Fireworks and Safety Fourth for the sole purpose of trying to avoid a $200,000 judgment owed to appellees. Appellants, on appeal, do not dispute this fact. Rather, appellants argue, as they did below, that a fireworks license is not property. In order to establish a fraudulent transfer, appellants maintain that the debtor must dispose of some "asset" which is defined as "property of a debtor." R.C. 1336.01(B). Thus, appellants argue that appellees cannot seek redress under Ohio's Fraudulent Transfer Act.
Ohio case law has established that a license issued by the state to sell a product does not convey a "property" interest in the license itself. However, it is undeniable that a license to sell fireworks, or any other product, has a pecuniary value because the holder of the license is permitted to sell a good for profit. See Brookpark, supra, at 714. Under these circumstances, we cannot fault the trial court for utilizing its equitable powers to formulate a remedy to protect appellees from the fraudulent acts of appellants. We further believe that an interpretation of the Ohio's Fraudulent Transfer Statute to permit courts to reach monies generated by a license is consistent with public policy. To hold otherwise would permit, as appellants seem to request this court to hold, that any debtor who holds a license to do business may freely transfer the license to another entity and escape all liability for debts. Appellant fails to cite any case law for this proposition, and we refuse to establish such a precedent. Instead, we choose to broadly construe Ohio's Fraudulent Transfer Statute to reach this factual scenario as determined by the trial court. This interpretation of the statute is in accordance with the following pronouncement of the Supreme Court of Ohio:
 " 'The purpose of the Uniform Fraudulent Conveyance Act is primarily for the benefit of creditors, * * *. It is a remedial statute and a liberal construction should be given it to accomplish its purpose of giving speedy relief against a fraudulent debtor.' " Locafrance v. Interstate Dist. Serv. Inc. (1983), 6 Ohio St.3d 198, 201, quoting Running v. Widdes (1971), 52 Wis.2d 254, 259, 190 N.W.2d 169.
Finally, we note that appellees in their brief to this court have criticized the trial court's decision as failing to grant them sufficient relief. Appellees assert that the trial court should have "pierced the corporate veil" and charged Abdalla, personally, with responsibility for the debt. Appellees failed to file a notice of appeal from the trial court's decision, and, thus, are barred from arguing any "error" in the trial court's decision. We would note, however, that Ohio's Fraudulent Transfer Act provides the trial court with the discretion to grant a variety of different remedies, including any "relief that the circumstances may require." See R.C.1336.07. In this instance, the trial court attempted to fashion an equitable remedy based on the circumstances before it. These circumstances included a pending action in the Bankruptcy Court and the prospect of other creditors seeking to be paid from assets fraudulently conveyed by appellants.
Under the circumstances of this case, we cannot fault the trial court for fashioning its decision to address appellants' fraudulent acts. Appellants' sole assignment of error is without merit.
Based on the foregoing, the judgment of the trial court is affirmed.
 ----------------------------- JUDGE WILLIAM M. O'NEILL
FORD, P.J., NADER, J., concur.
[1] R.C. 3743.17(D) permits the transfer of a license to sell fireworks, in certain circumstances, upon the approval of the State Fire Marshall.